IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| VICTOR SANCHEZ, JR., on behalf of himself and all others similarly situated, § § § § § § § § § § § § § | |
| Plaintiff, | |
| V. | CIVIL ACTION NO. _____ |
| SUPERIOR SYSTEMS & TECHNOLOGIES, L.L.P. (a/k/a Superior Systems & Technologies, LLP and Superior Systems & Technologies, LTD), RODNEY SHANK, SAM PEACOCK, AND DIETRICH FAMILY, L.P. | |
| Defendants. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Victor Sanchez, Jr. ("Plaintiff"), on behalf of himself and all others similarly situated, files this Original Complaint against Superior Systems & Technologies, L.L.P. (a/k/a Superior Systems & Technologies, LLP and Superior Systems & Technologies, LTD) (collectively "SST"), Rodney Shank ("Shank"), Sam Peacock ("Peacock"), and Dietrich Family, L.P. ("Dietrich") (collectively "Defendants") showing in support as follows:

**I.    INTRODUCTION**

1.    This is a lawsuit to recover unpaid overtime back wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., on behalf of Plaintiff and other similarly situated laborers employed by Defendants from June 27, 2009 forward.

2.    Plaintiff and the putative class members worked as laborers in Defendants' "metal fabrication" business. Defendants' business primarily involved manufacturing, repairing and assembling equipment in connection with commercial generator power units. These generator

power units/services related to generator power units were provided to customers in Texas and other states.

3. Defendants violated the FLSA overtime wage requirements because they attempted to artificially divide the work of Plaintiff and the putative class members into "on-the-clock" work and "contract" work, and generally limited the "on-the-clock" work to 40 hours per workweek. However, the performance of the so-called "contract" work resulted in Plaintiff and the putative class members regularly working in excess of 40 hours per workweek. In fact, it was common for the workweek to be 80 hours or more when both "on-the-clock" and "contract" work was performed by Plaintiff and the putative class members. Despite regularly working more than 40 hours per workweek, Plaintiff and the putative class members were never paid overtime compensation as required by the FLSA. There was no material difference in the job duties or business purpose involved in those two artificial categories of work. All such work was directly related to Defendants' "metal fabrication" generator power unit business. All hours performed for that "work" should be factored in determining the number of hours worked per workweek by Plaintiff and the putative class members.

4. Plaintiff seeks certification of a FLSA collective action for all similarly situated laborers employed by Defendants from June 27, 2009 forward who, like Plaintiff, were not paid overtime compensation for each and every hour worked over 40 in each and every workweek.

5. Plaintiff and the putative class members seek back overtime wages, liquidated damages, legal fees and costs from Defendants.

## II. THE PARTIES, JURISDICTION AND VENUE

### A. Victor Sanchez, Jr.

6. Plaintiff, Victor Sanchez, Jr., is a former employee of Defendants and is a natural person who resides in Abilene, Texas. He has standing to file this lawsuit. He worked as a laborer for Defendants at their Merkel, Texas location from approximately late 2007 to July 2009, and again from approximately December 2010 to June 2012. Plaintiff was engaged in commerce or the production of goods for commerce during every workweek while employed by Defendants.

### B. Putative Class Members

7. The putative collective action members are current and former employees of Defendants with the primary job duties described in Paragraphs 37-38 herein who are/were employed by Defendants from June 27, 2009 forward. All of the putative collective action members are similarly situated to Plaintiff and to one another within the meaning of Section 216(b) of the FLSA. Like Plaintiff, the putative plaintiffs were engaged in commerce or the production of goods for commerce during every workweek while employed by Defendants.

### C. Superior Systems & Technologies, L.L.P. a/k/a Superior Systems & Technologies, LLP and Superior Systems & Technologies, LTD

8. Defendant Superior Systems & Technologies, L.L.P. is a former Texas limited liability partnership. Plaintiff incorporates by reference as if fully set forth herein the detailed allegations regarding the SST business entity set forth in Paragraphs 40-44 below. SST failed to list a registered agent with the Texas Secretary of State but listed Peacock and Dietrich as two of the three general partners in its most recent filing with the Texas Secretary of State.[1]

---

[1] Exhibit A – October 13, 2010 Form 701 Registration of a Limited Liability Partnership for "Superior Systems & Technologies, L.L.P." filed with the Texas Secretary of State.

*Original Complaint - Page 3 of 20*

Furthermore, SST's limited liability partnership lapsed on October 13, 2011.[2] Accordingly, service of process may be accomplished by serving Sam Peacock, 274 County Road 287, Merkel, Texas 79536 or the Dietrich Family, LP via its registered agent, Ms. Ann Dietrich, 7001 Colleyville Blvd, Colleyville, Texas 76034. SST is/was an employer pursuant to the FLSA. Alternatively, SST is/was a joint employer pursuant to the FLSA.

### D. Rodney Shank

9. Defendant Rodney Shank is a natural person and citizen of the state of Texas residing in Ochiltree County, Texas. Rodney Shank may be served with process at 1410 S Grinnell Street, Perryton, Texas 79070.

10. Plaintiff incorporates by reference as if fully set forth herein the allegations in Paragraphs 40-44 below.

11. Shank has/had operational control over compliance with the FLSA for SST. Shank's responsibilities include/included hiring, firing, job duties, compensation, finances, employee performance evaluations and compliance with the overtime pay requirements of the FLSA for Plaintiff and similarly situated employees.

12. Shank has/had economic control over the ultimate decisions made by SST, and individuals acting on behalf of SST with regards to compliance with the FLSA. Shank was frequently present in the business location where Plaintiff and similarly situated employees worked where he exercised his duties as an owner/officer of SST. As such, Shank knew or should have known that: Plaintiff and similarly situated employees were working more than 40 hours per workweek; that Plaintiff and similarly situated employees, as non-exempt employees,

---

[2] Exhibit B – Texas Secretary of State business record showing that Superior Systems & Technologies, L.L.P. became inactive on October 13, 2011.

were entitled to overtime compensation for all hours worked over 40 in a workweek; and that Plaintiff and similarly situated employees were not being paid overtime premiums for their overtime hours. Despite having the clear and undisputable authority and operational control as an owner/officer to ensure compliance with the FLSA, Shank failed to take sufficient action to ensure compliance.

13. Shank is an employer pursuant to the FLSA. Alternatively, Shank is a joint employer pursuant to the FLSA.

14. Furthermore, and as set forth in detail in Paragraphs 40-44 herein, Shank is also individually responsible for the damages claimed in this lawsuit from the time period of June 26, 2009 to September 14, 2009 because the SST business entity was not legally formed as a limited liability partnership during that time period. When the SST entity was formed in 2005, it was named "Superior Systems & Technologies, LTD."[3] However, Texas law requires that for an entity to be formed as a limited liability partnership, it must contain in its name one of the following – "limited liability partnership," "LLP" or "L.L.P." Tex. Bus. Orgs. Code §§ 5.063(a), 152.802(a), 152.803. The SST entity in existence from June 26, 2009 to September 14, 2009 did not use any of the foregoing terms. Instead, SST used the abbreviation "LTD" in its name. As such, no limited liability partnership was created pursuant to Texas law and the purported partners of SST during the time period of June 26, 2009 to September 14, 2009 are individually liable for damages claimed in this lawsuit.

15. Additionally, although the SST entity was apparently properly registered as a "LLP" and "L.L.P." on and after September 14, 2009, SST's limited liability partnership status

---

[3] Exhibit C - April 4, 2005 Form 701 Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.

lapsed with the state of Texas on October 13, 2011.[4]  Accordingly, the partners of that entity are also individually responsible for the damages claimed in this lawsuit for the time period of October 13, 2011 forward.  On information and belief, Shank was a partner of SST from the time period of October 13, 2011 forward.

### E. Sam Peacock

16. Defendant Sam Peacock is a natural person and citizen of the state of Texas residing in Taylor County, Texas.  Peacock may be served with process at 274 County Road 287, Merkel, Texas 79536.

17. Plaintiff incorporates by reference as if fully set forth herein the allegations in Paragraphs 40-44 below.

18. Peacock has/had operational control over compliance with the FLSA for SST. Peacock's responsibilities include/included hiring, firing, job duties, compensation, finances, employee performance evaluations and compliance with the overtime pay requirements of the FLSA for Plaintiff and similarly situated employees.

19. Peacock has/had economic control over the ultimate decisions made by SST, and individuals acting on behalf of SST with regards to compliance with the FLSA.  Peacock was frequently present in the business location where Plaintiff and similarly situated employees worked where he exercised his duties as an owner/officer of SST.  As such, Peacock knew or should have known that: Plaintiff and similarly situated employees were working more than 40 hours per workweek; that Plaintiff and similarly situated employees, as non-exempt employees, were entitled to overtime compensation for all hours worked over 40 in a workweek; and that Plaintiff and similarly situated employees were not being paid overtime premiums for their

---

[4] Exhibit B – Texas Secretary of State business record showing that Superior Systems & Technologies, L.L.P. became inactive on October 13, 2011.

overtime hours. Despite having the clear and undisputable authority and operational control as an owner/officer to ensure compliance with the FLSA, Peacock failed to take sufficient action to ensure compliance.

20.     Peacock is an employer pursuant to the FLSA. Alternatively, Peacock is a Joint Employer pursuant to the FLSA.

21.     When the SST entity was formed in 2005, it was named "Superior Systems & Technologies, LTD."[5] However, Texas law requires that for an entity to be formed as a limited liability partnership, it must contain in its name one of the following – "limited liability partnership," "LLP" or "L.L.P." Tex. Bus. Orgs. Code §§ 5.063(a), 152.802(a), 152.803. The SST entity in existence from June 26, 2009 to September 14, 2009 did not use any of the foregoing terms. Instead, SST used the abbreviation "LTD" in its name. As such, no limited liability partnership was created pursuant to Texas law and the purported partners of SST during the time period of June 26, 2009 to September 14, 2009 are individually liable for damages claimed in this lawsuit. There were two partners during that time period, and one of those partners is known to be Shank.[6] While the identity of the second partner during that time period is currently unknown, to the extent that second partner is Peacock, then Plaintiff alleges that Peacock is individually liable for damages claimed in this lawsuit during the time period of June 26, 2009 to September 14, 2009.

22.     Additionally, although the SST entity was apparently properly registered as a "LLP" and "L.L.P." on and after September 14, 2009, SST's limited liability partnership status

---

[5] Exhibit C - April 4, 2005 Form 701 Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.

[6] Exhibit D – May 29, 2008 Renewal of Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.

lapsed with the state of Texas on October 13, 2011.[7]  Accordingly, the partners of that entity are also individually responsible for the damages claimed in this lawsuit for the time period of October 13, 2011 forward.  According to business records filed with the Texas Secretary of State, Peacock was a partner of SST from the time period of October 13, 2011 forward.[8]

### F.    Dietrich Family, L.P.

23.    Defendant Dietrich Family, L.P. is a Texas limited partnership with its registered office at 7001 Colleyville Boulevard, Colleyville, Tarrant County, Texas 76034.  Dietrich may be served with process by serving its registered agent, Ann Dietrich, at 7001 Colleyville Boulevard, Colleyville, Texas 76034.

24.    Plaintiff incorporates by reference as if fully set forth herein the allegations in Paragraphs 40-44 below.  Texas law requires that for an entity to be formed as a limited liability partnership, it must contain in its name one of the following – "limited liability partnership," "LLP" or "L.L.P."  Tex. Bus. Orgs. Code §§ 5.063(a), 152.802(a), 152.803.  The SST entity in existence from June 26, 2009 to September 14, 2009 did not use any of the foregoing terms.  Instead, SST used the abbreviation "LTD" in its name.  As such, no limited liability partnership was created pursuant to Texas law and the purported partners of SST during the time period of June 26, 2009 to September 14, 2009 are individually liable for damages claimed in this lawsuit during that time period.  There were two partners during that time period, and one of those partners is known to be Shank.[9]  While the identity of the second partner during that time period

---

[7] Exhibit B – Texas Secretary of State business record showing that Superior Systems & Technologies, L.L.P. became inactive on October 13, 2011.

[8] Exhibit A – October 13, 2010 Form 701 Registration of a Limited Liability Partnership for "Superior Systems & Technologies, L.L.P." filed with the Texas Secretary of State.

[9] Exhibit D – May 29, 2008 Renewal of Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.

is currently unknown, to the extent that second partner is Dietrich, then Plaintiff alleges that Dietrich is individually liable for damages claimed in this lawsuit during the time period of June 26, 2009 to September 14, 2009 and that Dietrich was an employer/joint employer pursuant to the FLSA during that time period.

25.     Additionally, although the SST entity was apparently properly registered as a "LLP" and "L.L.P." on and after September 14, 2009, SST's limited liability partnership status lapsed with the state of Texas on October 13, 2011.[10]  Accordingly, the partners of that entity are also individually responsible for the damages claimed in this lawsuit for the time period of October 13, 2011 forward.  According to business records filed with the Texas Secretary of State, Dietrich was a partner of SST from the time period of October 13, 2011 forward.[11] Furthermore, from the time period of October 13, 2011 forward, Dietrich is an employer/joint employer pursuant to the FLSA.

### G.     Jurisdiction and Venue

26.     The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.  During all times relevant to this lawsuit, Defendants have done business in the state of Texas, and with the exception of SST whose limited liability partnership status lapsed on October 13, 2011,[12] continue to do business in the state of Texas.

27.     At all times relevant to this lawsuit, Defendants have employed more than two employees and are engaged in interstate commerce.  As set forth in more detail in Paragraph 30

---

[10] Exhibit B – Texas Secretary of State business record showing that Superior Systems & Technologies, L.L.P. became inactive on October 13, 2011.

[11] Exhibit A – October 13, 2010 Form 701 Registration of a Limited Liability Partnership for "Superior Systems & Technologies, L.L.P." filed with the Texas Secretary of State.

[12] Exhibit B – Texas Secretary of State business record showing that Superior Systems & Technologies, L.L.P. became inactive on October 13, 2011.

below, Defendants provide goods and services in interstate commerce in connection with their "metal fabrication" business. On information and belief, Defendants have annual gross sales or business volume in excess of $500,000 in connection with the employment of Plaintiff and the putative class members in Defendants' "metal fabrication" generator power unit business.

28. The Court has subject matter jurisdiction over this case based on federal question jurisdiction because Plaintiff bases his claim and the claims on behalf of the putative collective action members on federal law, 29 U.S.C. § 201, *et seq*.

29. Venue is proper in the Northern District of Texas because Defendants maintain business operations in the Northern District of Texas and Defendants reside within the boundaries of the Northern District of Texas. Venue is proper in the Amarillo Division of the Northern District of Texas because Defendant Shank resides within the Amarillo Division (see Paragraph 9 above) and SST maintained business operations in Amarillo, Texas during the time period relevant to this lawsuit (see Paragraphs 40-42 below).

**III.   FACTS**

    **A.   FLSA Violations as to Plaintiff and the Putative Class Members**

30. Defendants operate a metal fabrication business, and during the time period relevant to this lawsuit, maintained business operations in Merkel, Texas and Amarillo, Texas. Defendants fabricated fuel tanks and enclosures/sheds for generators. After obtaining generators manufactured by third parties, such as Cummins, Inc., Defendants then assembled the final generator power unit products for delivery to customers. Examples include generator power units used by hospitals, office buildings and other commercial establishments. Additionally, Defendants performed other services related to those generator power units such as repair and replacement of certain parts. Generator power units and other products

fabricated/assembled/repaired by Defendants were delivered/provided to customers in Texas and other states.

31.     The Plaintiff was employed by Defendants from approximately late 2007 to July 2009, and again from approximately December 2010 to June 2012.  Plaintiff worked as a laborer for Defendants at their SST Merkel, Texas location.  Plaintiff's job duties as a laborer included assembling, welding, shearing, torching, pipe threading, painting, cleaning and other duties related to Defendants' business operations.  At all times relevant to this lawsuit, Plaintiff was an employee of Defendants as defined by the FLSA.

32.     Defendants attempted to divide Plaintiff's work into two categories – (1) "on-the-clock" hourly work, and (2) off-the-clock "contract" work.  Defendants attempted to keep Plaintiff's on-the-clock hourly work to no more than 40 hours per workweek.  However, the so-called "contract" work pushed Plaintiff's hours per workweek well past 40 on a regular basis.

33.     During the so-called "contract" work, Plaintiff did the same type of work for the same employer as he did during the "on-the-clock" work.  As was the case during "on-the-clock" work, Plaintiff performed work related to fabricating generator fuel tanks and fabricating/assembling generator power units for Defendants during the so-called "contract" work.  Both "contract" work and "on-the-clock" work were performed on the premises of SST.

34.     For example, Plaintiff would typically work "on-the-clock" Mondays through Thursdays from 7:00 am to 5:30 pm, with a 30 minute lunch break each day.  That "on the clock" work generally equaled 40 hours per week and Plaintiff was paid an hourly rate of pay for that work.  However, during many workweeks, Defendants would then assign Plaintiff so-called "contract" work outside of his "on-the-clock" work period.  For example, Plaintiff would frequently work significant hours after 5:30 pm on Mondays through Thursdays, and would work

significant hours on Fridays, Saturdays and Sundays for Defendants during the so-called "contract" work period. For "contract" work, Defendants paid a flat rate that was divided by the number of employees performing the "contract" work regardless of the number of hours worked by those employees. That "contract" work involved the same job duties related to the ongoing business purpose of Defendants – fabricating fuel tanks, enclosures and related work regarding generator power units. The only material difference in the work performed by Plaintiff for "on-the-clock" laborer work for Defendants as opposed to "contract" laborer work for Defendants was the manner in which Plaintiff was paid.

35. Despite regularly working in excess of 40 hours per workweek as an employee of Defendants, Plaintiff was not paid overtime compensation as required by the FLSA for each and every such workweek. Plaintiff seeks recovery of unpaid overtime back wages, liquidated damages, legal fees and costs in this lawsuit.

36. Defendants had a widespread policy/practice to avoid paying Plaintiff overtime wages by arbitrarily and unlawfully dividing his work period into "on-the-clock" work hours and "contract" work hours. That widespread policy/practice was in violation of the FLSA overtime wage requirements. It is no coincidence that Plaintiff's "on-the-clock" hours ended at no more than 40 hours per workweek. By then having Plaintiff do his same primary job duties related to Defendants' ongoing business purpose as "contract" work, Defendants unlawfully and willfully attempted to avoid paying FLSA mandated overtime compensation to Plaintiff. As Plaintiff frequently worked in excess of 80 hours a workweek when doing "on-the-clock" work in addition to "contract" work, Defendants failed to pay significant overtime wages that were due Plaintiff.

37.     At all times relevant to this lawsuit, Defendants employed, and continue to employ, several employees that are similarly situated to Plaintiff.  Defendants typically employ an approximate total of seven laborers at any given time in their business operations, and those employees are similarly situated to Plaintiff with regards to compensation method, primary job duties, exemption status, work schedules and typical hours worked.  The putative class members were, like Plaintiff, the victims of a common widespread policy/practice of Defendants to deny them FLSA mandated overtime pay as described in more detail in Paragraphs 32-36 above.

38.     Plaintiff and similarly situated employees worked on the production side of the business with the primary duties of laborers.  Those duties include assembling, welding, shearing, torching, pipe threading, painting, cleaning and other duties related to Defendants' metal fabrication generator power unit business.  Plaintiff and similarly situated employees engaged in commerce in the performance of their primary duties.  Examples include the use of tools, raw materials, equipment and goods supplied, manufactured and/or distributed in interstate commerce.   Furthermore, Plaintiff and similarly situated employees assisted in the fabrication/manufacturing/assembling of goods produced/manufactured by Defendants which were delivered to customers and/or locations outside the state of Texas.

39.     Like Plaintiff, the members of the putative class were not paid overtime compensation for all hours worked over 40 in each and every workweek.  Therefore, Defendants failed to comply with the FLSA because they did not pay Plaintiff and similarly situated employees overtime wages for each hour worked over 40 for each and every workweek.  Plaintiff and the putative collective action members seek FLSA back pay, liquidated damages, costs and legal fees for Defendants' failure to pay overtime wages from June 27, 2009 forward.

### B.      History of Superior Systems & Technologies, L.L.P.

40.    On information and belief, Defendant Shank created and entity doing business as "Superior Systems & Technologies, LTD" and attempted to form that entity as a Texas limited liability partnership on April 4, 2005.[13]  At that time, the limited liability partnership had one general partner, presumably Shank, and the principal business was listed as "metal fabrication."[14]  The principal office location was listed as 7201 I-40 West, Suite 100, Amarillo, Texas 79106.[15]

41.    Sometime thereafter, but on or prior to May 29, 2008, that purported limited liability partnership doing business as Superior Systems & Technologies, LTD expanded to include two partners according to renewal paperwork filed with the Texas Secretary of State.[16]  One of those partners was Shank.[17]  The other partner is currently unknown, but is believed to be either Peacock or Dietrich.  That May 29, 2008 renewal paperwork identified the principal

---

[13] Exhibit C – April 4, 2005 Form 701 Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.  Although Form 701 and state law requirements for the proper creation of a Texas limited liability partnership require the use of the phrase "limited liability partnership" or "registered limited liability partnership" or the abbreviation "LLP" or "L.L.P." in the name of the entity, Rodney Shank created this entity with the abbreviation "LTD."  This defective formation failed to create a Texas limited liability partnership.  As such, individual partners are not shielded from individual liability for the SST business entity during the relevant time period that the SST entity was doing business as Superior Systems & Technologies, LTD.

[14] *Id.*

[15] *Id.*

[16] Exhibit D – May 29, 2008 Renewal of Registration of a Limited Liability Partnership for Superior Systems & Technologies, LTD filed with the Texas Secretary of State.  Like the April 4, 2005 filing, the name of this entity was also defective and not in compliance with Texas law for the proper creation of a limited liability company.  As such, individual partners are not shielded from individual liability for the SST business entity during the relevant time period that the SST entity was doing business as Superior Systems & Technologies, LTD.

[17] *Id.*

business as "metal fabrication" and the principal office as 7201 I-40 West, Suite 100, Amarillo, Texas 79106.[18]

42.     On September 14, 2009, Shank filed a Registration of a Limited Liability Partnership with the Texas Secretary of State forming an entity known as "Superior Systems & Technologies, LLP."[19]  Like the previous filings for Superior Systems & Technologies, LTD, this filing lists two partners, one of which was Shank.[20]  The other partner is currently unknown, but is believed to be either Peacock or Dietrich.  The principal business listed in that September 14, 2009 filing is "metal fabrication" and the principal office location is listed as 7410 Golden Pond, Suite 300, Amarillo, Texas 79121.[21]

43.     On October 13, 2010, Peacock and Dietrich filed a Registration of a Limited Liability Partnership with the Texas Secretary of State for an entity referred to as "Superior Systems & Technologies, L.L.P."[22]  That filing lists three partners, but identifies only two of them by name - Peacock and Dietrich.[23]  On information and belief, the third partner who is not identified by name in that filing is Shank.  The principal office address listed in that filing was 274 County Road 287, Merkel, Texas 79536.[24]

44.     Superior Systems & Technologies, L.L.P. and Superior Systems & Technologies, LTD are the same business enterprise/business operation as Superior Systems & Technologies,

---

[18] *Id.*

[19] Exhibit E – September 14, 2009 Form 701 Registration of a Limited Liability Partnership for "Superior Systems & Technologies, LLP" filed with the Texas Secretary of State.

[20] *Id.*

[21] *Id.*

[22] Exhibit A – October 13, 2010 Form 701 Registration of a Limited Liability Partnership for "Superior Systems & Technologies, L.L.P." filed with the Texas Secretary of State.

[23] *Id.*

[24] *Id.*

LLP.  During all times relevant to this lawsuit, that entity which has gone by three different names is the same entity which has employed Plaintiff and the putative class members in the metal fabrication generator power unit business identified in Paragraph 30 above.

### IV. CONTROLLING LEGAL RULES

45. The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

46. Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA.

47. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ."  29 U.S.C. § 207(e).

48. "Work" is not defined by the FLSA, but has been interpreted to mean "all time during which an employee is necessarily required to be on the employer's premises." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946).

49. "Workday" means "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 C.F.R. § 790.6(a).  Principal activities include "all activities which are an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956).

50. Individual officers and managers of a business entity can be considered employers under the FLSA in addition to the corporate entity.  See  *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages"); *Grim Hotel Co.,* 747 at 971 (quoting *Falk v. Brennan,* 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973))

("The definition of "employer" under the FLSA is "expansive," extending liability for persons with "managerial responsibilities" and "substantial control of the terms and conditions of the [employee's] work.").

51.     In order for a limited liability partnership to lawfully be created in Texas, the name of the entity must contain one of the following: "limited liability partnership" or an abbreviation of that phrase (i.e. L.L.P. or LLP).  Tex. Bus. Orgs. Code §§ 5.063(a), 152.802(a), 152.803.

V.     **FLSA CLAIM FOR OVERTIME PAY**

52.     This action is authorized and instituted pursuant to the FLSA.  29 U.S.C. § 201, *et seq*.

53.     All conditions precedent to this suit, if any, have been fulfilled.

54.     At all material times, Plaintiff and the putative collective action members are/were employees under the FLSA.  29 U.S.C. § 203(e).

55.     At all material times, the putative collective action members are/were similarly situated to the Plaintiff and to each other and are/were employees under the FLSA.  29 U.S.C. § 203(e).

56.     Defendants meet the definition of eligible and covered employers/joint employers under the FLSA.  29 U.S.C. § 203(d).  The specific time periods for which employer status is claimed as to each Defendant are identified in Paragraphs 8-25 above.

57.     At all material times, Plaintiff and the putative collective action members regularly worked in excess of 40 hours per seven-day workweek.  Both "on-the-clock" work and "contract" work for Defendants collectively constitute "work" pursuant to the FLSA for purposes of calculating the number of hours worked per workweek.  Furthermore, on days that Plaintiff and putative class members performed both "on-the-clock" work and "contract" work for

Defendants, both categories of "work" fall under the continuous "workday" rule for purposes of calculating the number of hours worked per workweek.

58. At all material times, Plaintiff and the putative collective action members were not paid on a "salary basis." Plaintiff and the putative collective action members were not "exempt" from the FLSA overtime wage laws as a result of their compensation method.

59. At all material times, the primary duties of Plaintiff and the putative collection action members do not meet the "duties test" for any FLSA exemption. Plaintiff and the putative collective action members were not "exempt" from the FLSA overtime wage laws based on their primary duties.

60. At all material times, Plaintiff and the putative collective action members were and are entitled to overtime compensation at one and one-half times the regular rate of pay. 29 U.S.C. § 207(a)(1).

61. Defendants failed to pay Plaintiff and putative collective action members overtime compensation for all hours worked over 40 in a seven-day workweek.

62. Defendants' violations of the FLSA was and remains willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness).

63. Defendants have not made a good faith effort to comply with the requirements of 29 U.S.C. § 260. Accordingly, Plaintiff and the putative collective action members are entitled to liquidated damages.

64. Where, as here, "the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide

basis." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case).

65.     Accordingly, Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of "all current and former laborers who are/were employed by Defendants and who were not paid overtime compensation for hours worked over 40 in any workweek from June 27, 2009 forward."

66.     Plaintiff hereby consents to sue for violations of the FLSA, pursuant to 29 U.S.C. §§ 207, 216(b) and 256.

## VI.   JURY DEMAND

67.     Plaintiff demands a jury trial.

## VII.  DAMAGES AND PRAYER

68.     Plaintiff asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiff and those persons similarly situated to Plaintiff be awarded a judgment against Defendants for the following:

- a. Actual damages in the amount of unpaid overtime back wages;
- b. Liquidated damages under the FLSA;
- c. Pre-judgment and post-judgment interest;
- d. Court costs;
- e. Reasonable attorney's fees; and
- f. All other relief to which Plaintiff and those similarly situated to Plaintiff are entitled.

Respectfully submitted,

BARON & BUDD, P.C.


By:    s/Allen R. Vaught
       Allen R. Vaught
       Baron & Budd, P.C.
       State Bar No. 24004966
       3102 Oak Lawn Avenue, Suite 1100
       Dallas, Texas  75219
       (214) 521-3605 – Telephone
       (214) 520-1181 – Facsimile
       avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFF